The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Amy C. Lannard presiding. The court is taking up case number 4-2-3-1-2-5-8, people. The State of Illinois v. Charles D. Anderson. And counsel for the appellant, if you'd please state your name for the record. Jack Axelrude. And counsel for the appellee, please state your name for the record. James Ryan Williams. And Mr. Axelrude, you may proceed with your argument. Thank you, Your Honor, and may it please the court, counsel. Again, my name is Jack Axelrude, and I'm here on behalf of the appellant, Mr. Charles Anderson. This case has two issues. The first is that the state failed to prove that the item recovered qualified as contraband under the statute. The second is that the state's primary evidence that Mr. Anderson knowingly possessed the item was obtained in violation of a Sixth Amendment right to counsel. Getting right into the first issue, the state failed to prove beyond a reasonable doubt that the plastic item recovered here was a weapon, in particular, a knife, under the relevant definitions of the statute. This is an issue of statutory interpretation. Under the statute, the state must prove that the individual knowingly possessed contraband in a penal institution. Contraband includes various item groups, but the relevant class is weapon. And under the statutory definition of a weapon, the item must have qualified as a knife, as none of the other items listed could reasonably apply here. Indeed, the state does not dispute that the piece of plastic must fall under the definition of a knife to qualify under the statute. To determine whether the plastic item falls under the definition of a knife, we must look to the legislature's intent, best indicated by giving the statutory language its plain and ordinary meaning. And whenever there is any debate about the plain meaning, we must invoke the rule of lenity, where we adopt the more lenient interpretation of a criminal statute and interpret it in favor of the defending. Because there is no definition for knife under the statute, we must look to the relevant dictionary definitions, which say that a knife consists of a blade affixed, attached, or fastened to a handle. The relevant case law further supports this definition with Illinois courts finding a knife is made from a blade that is affixed or fastened to a handle. Here, the plastic item recovered does not meet this definition. The item here was part of a plastic cup. It was not a blade. The plastic did not have a handle. It had a torn bed sheet wrapped around one end. It was not affixed or attached. The plastic item here, even if you want to call it a shank, is not a knife under the relevant definition. And there is no case law supporting the idea that a knife can be made from a piece of plastic. The item here was not a knife. It was plastic. A plastic knife is not a knife. I'm sorry, Your Honor? So a plastic knife is not a knife. A plastic knife can be a knife if it has a blade that is attached to a handle. Here, I do not think the piece of a cup qualifies as a blade. What if it's all one piece and it's formed into a blade at one end and a handle at the other? It's not a knife? Your Honor, I think in those situations when there is a distinct handle and then there is a blade and there's a part that you can hold on to and it's attached in one piece, I do believe that could qualify as a knife. But here, when we're interpreting the statute, I believe that it's proper for us to read it because the legislator wrote it. Well, this was plastic. It was one piece. One end was sharpened, the other end was dull, and it was wrapped with a piece of bedsheet to make a handle. What's the difference? I believe in this instance that using the definition, I do not believe that it was a handle as we know it under the definition. And because the legislator wrote this statute in such a narrow manner, I believe we should read it as comprehensive. And because of that, with all the definitions they used, I do not believe that the item from this case would fall under any of those definitions. And as a result, I believe that the state failed to prove that Mr. Anderson possessed any contraband under the statute. And as a result, we would ask that this court reverse Mr. Anderson's conviction. Counselor, you indicated that this was not a blade. So what authority do you have that you cite or what would be the definition then of a blade? Is it simply having a sharp edge? Your Honor, I believe it is. It can be somewhat of a case-by-case basis. But in Illinois courts, the instances in which these types of items have qualified as having a blade, they've been made from sharpened metal for the most part, some with glass. So you're suggesting then going back to Justice DeArmond's comment that a blade requires that it's made of metal? I think it can be a subjective interpretation of this. I think in this instance, the piece of sharpened plastic would not qualify as a blade. But regardless, I do not think it qualifies as a knife under the entire definition, as I do not believe the bed sheet wrapped around the one end would qualify as a handle under the definitions, as it was not a fix. It was just, you know, holding on to one end. And I think with legislature's specificity and the relevant dictionary definitions that we turn to, we must find that the item here does not qualify as a knife. And for those reasons, we would ask that this Court reverse Mr. Anderson's conviction. If there are no further questions on the first issue, I will move on to the second issue. Sorry, excuse me. Sorry. The second issue is that the state's primary evidence that Mr. Anderson knowingly possessed the item here came from statements that were deliberately elicited from him by correctional officers in violation of Mr. Anderson's Sixth Amendment right to counsel. This was a Messiah violation from Messiah versus United States, which has three elements. The first is that the defendant's Sixth Amendment right to counsel has attached. The second is that the individual seeking information from the defendant is a government agent acting without defendant's counsel being present. And the third is that that agent deliberately elicits incriminating statements from the  All three elements are met here. An individual's Sixth Amendment right to counsel attaches at the initiation of adversarial judicial proceedings, including arraignment. And deliberate elicitation occurs when the government intentionally creates a situation. I'm sorry. When was the defendant arraigned? The defendant was arraigned just before this conversation took place. Tell me, I'm asking you date wise. When was the defendant arraigned? Yeah, sorry, I believe it was the the first. I believe it was February 1st or 2nd. I think there was some debate about that, but I believe we just we after going back through the facts or is a big or. I'm sorry, what? That's a big or. Well, I believe it. Regardless, he was just arraigned before this conversation took place. I think on our end it was. I'm sorry, what you sure about that from the record? I am your honor. I think Officer Loftus Correctional Officer Loftus, who was one of the officers that was involved in this conversations, admitted that that Mr Anderson was just on his way back from being arraigned for this instance. He was on his way back from court. From being arraigned for this charge, I well, that's what he thought. But was he in fact arraigned on that day? I think yes, your honor. When we went back and looked, it was the arraignment was the day following it. Well, actually, if you go back and look, you'll see that he was that this incident occurred on the 31st. He was he was at a bond hearing on the 1st and he was arraigned on the 2nd. You're right, your honor. Thank you. Now, the conversation took place on the 1st. He hadn't been arraigned yet. What 6th Amendment right attached? Your honor, I do believe this occurred on the 2nd. When you look now that you refresh my memory on the facts, you are right that he was arraigned two days following this, the shakedown that occurred. He conversation occurred on the 1st. Your honor, I believe he I believe it occurred on the 2nd, but I will conversation occurred on the 1st. The videos are all from February 1st. OK, well, I think from the record, the way we read it, that he had just been arraigned on this charge from that. So. OK, your honor. In that instance, then it's not true. What 6th Amendment right attached? Well, I would say that the 6th Amendment right attaches when the government when the government positions itself in an adversarial way that it's obvious that they will be charging the defendant. And in this case, the shakedown occurred on the 31st. The item was recovered and Mr. Anderson knew that they were charging him with the possession of this item. So I think it says the 6th Amendment right to counsel attaches at or after the initiation of adversarial judicial proceedings, whether by way of a formal charge, preliminary hearing, indictment, information or arraignment. None of those occurred here. Your honor, I. Believe that in this instance, his 6th Amendment right should still attach because the position of the government was clear that he would be charged in this instance. But I do hear what you're saying. And I think here. If we take it as. His 6th Amendment right had attached. That's another that's used a big or before. Now you're using a really big if. Yes, your honor. I believe it's this is an important distinction and I and I believe that. In this instance, with the brief later says on page 18, first paragraph, once a defendant has been charged with a crime and his 6th Amendment right to counsel has attached. The government is prohibited from deliberately, deliberately eliciting incriminating statements with respect to the charged crime. That's your Messiah claim, right? Yes, none of that happened here. Your honor, I do believe that there was a deliberate elicitation by government agents. I think the question of whether his 6th Amendment right to counsel had attached is, as you're pointing out. More difficult to prove. I think when you're looking at a Messiah violation. The goal of it is to prevent a defendant from being. From being essentially, you know, interrogated without counsel being present. Is the record even clear about how this conversation occurs? Who initiates it, or what was said? I do not believe it's clear. I think there I think one correctional officer did say that Mr Anderson initiated the conversation and our position is that under a Messiah violation where there was not Miranda warnings given. Um, that would not would not be a relevant factor would not be a relevant factor. We've already pretty well established that there is no Messiah situation. So where are we now? It's a good question. Your honor, I think if in my position is that. The Messiah violation, the 1 element that that we're not confident on is the 6th Amendment right to counsel had attached because of the difference in the dates and the records kind of. Not explicitly clear with how it all occurred. I think what is clear is that. These correctional officers deliberately elicited incriminating information from Mr. Anderson regarding this item of which he had just that had just been recovered in which they planned to arraign him on the next day. I think regardless of the correctional officers intent. This was a deliberate elicitation, the sort that Messiah would would be intended to keep out. I believe. That the correctional officers, because they did believe he was coming from his arraignment. I think that should, you know, play a part that his 6th Amendment right should you know that this was a Messiah violation as we. So it's a subjective standard. I think in this instance that, you know, the deliberate elicitation, if I believe you've been arraigned, that's all it's. I don't I don't even think the correctional officers intent matters. I think what matters is a deliberate elicit a deliberate elicitation is an objective. Analysis where here. They asked him why did you have this item? He denied even knowing about it, but the officers persisted and said, no, you're lying. Why did you have it? And Mr. Anderson finally said it's not mine. I was holding it for somebody else. I believe this was a deliberate elicitations as they repeatedly ask him, asked him about this item of which he had just been or which they plan to arraign him on. And so for those instances, I believe for that. For that reason, I believe that this was a clear deliberate elicitation, the type that Messiah wanted to prevent. And I believe counsel was ineffective for failing to file the statement. What else you got? That you're asking what else do they have that he knowingly possessed it? Yeah, I think the only other evidence to show that he knowingly that he potentially knowingly possessed it came from the idea that this item was recovered from his bunk from on top of his bunk. However, on top of or underneath or under some bedding, we're not really sure where from, but it was along with 138 illicit pills and some other substances. Right? Absolutely. Yes, your honor. And so here all stuff that looked like it was probably the type of things that a prisoner would hide. Yes, your honor. Not allowed to make a reasonable inference from that. Well, what I would say is that it was not in his bag of personal belongings. It was on underneath by his bunk. He was in. I'm sorry if I may interrupt you, though, with regards to the pills, though, ultimately wasn't their testimony that he had a prescription for them so that it did specifically tie those pills to him. Yes, your honor. I believe that those and so considering constructive possession, wouldn't it be a reasonable inference, even without the admission to find that? And I appreciate you're not calling it a knife, but the shank was constructively in his possession if it is with those other items. Your honor, I believe that in this instance, this. Where he was housed was in a special cell block that was not like your ordinary cell block. It was one big open room where there were 10 or so bunks on one end near the bathroom and the. People, these items are all found in the same area, correct? Yes, your honor. OK, and then I was excusing one additional follow up with regards to the. Inquiry that Justice DeArmond had. It appears to me that while the there was a bond order filed on February 1st, the complaint is not filed until February 2nd. Along with a subsequent bond order, correct? Yes, your honor. I believe that is true. Thank you. The only other thing I will say for the constructive possession is that his bunk was right next to the bathroom and the residents in this trustee block be were aware that a shakedown was about to occur because the correctional officers would gather in the hallway beforehand. So I think there is some doubt as to if Mr. Anderson was aware of this, and if he did know about this item that he wasn't supposed to have it, why would he kind of just leave it on his bunk, you know, underneath his bunk right before a shakedown occurred? I think it points to some doubt that he knew it existed at all before the shakedown occurred. So I think based on this situation with the with the with the question surrounding his knowing possession of it, that this was an error by counsel for failing to file a pre-trial motion, and as a result, this court should remand the matter for a new trial. If your honors do not have any last questions, we would just reiterate that we are asking this court to either vacate Mr. Anderson's conviction or at least remand the matter for a new trial. Thank you. You will have time in rebuttal. With that, Mr. Williams, argument, please. Thank you. May it please the court. Counsel, my name is James Ryan Williams, and it is my privilege to represent the state before this honorable court. The first question before this court is whether the shank the defendant possessed qualified as a weapon and was therefore prohibited contraband in a penal institution. Now, the applicable statute prohibits any knife, dagger, dirk, et cetera, or any other dangerous weapon or instrument of like character. So essentially, the question is, is was the object here of like character to a knife, for example, and the correctional officer described it as a piece from a plastic cup that had been sharpened down to a knife blade edge and had a blue sheet wrapped around the handle. Now, the defendant here argues that this was not like a knife for two separate reasons. First, it was not made of metal, and second, it was not affixed to a handle. This first requirement is essentially just extrapolated from the Supreme Court's decision in People v. Baez where the Supreme Court in the statement of facts described the item at issue there as a homemade knife made of sharpened metal. Now, just because the Supreme Court described the sharpened metal object in that case as a shank does not create some material composition requirement in all other cases. And in a similarly flawed analysis, the defendant claims that to be like a knife, the blade must be affixed to a handle. However, just because many knives are indeed affixed to a handle does not create a material construction requirement in all other cases. In fact, such a requirement would unnecessarily and impractically restrict what qualifies as a knife precluding objects that are unquestionably knives but that are simply made of a single piece of material. Now, statutes are to be construed to avoid absurd results, and the definition, the interpretation proposed here would no doubt produce absurd results. If a knife is only a knife if it's made of metal, and if a knife is only a knife if it's affixed to a handle. Now, unless the court has any further questions about the first argument, I would just with respect to the second argument, I substantively addressed it, and I can only apologize to this court. I overlooked the sequence of events that this court described thoroughly. So, unless there's any questions about the second argument, the state would just ask that this court affirm the defendant's conviction. Thank you for your time. Counsel, I do have a question with regards to one of the statements I believe you make in your brief is that even if the Sixth that it did not matter that the questions are being asked of this defendant because they were asked by correctional officers and not police investigators. Do you have any authority to support that proposition? On that point, Your Honor, if I'm not mistaken, I believe the way that I framed it in my brief was essentially as a negative that the defendant didn't provide any authority that a correctional officer qualifies as a government agent. I didn't find any authority on point. So, I guess I wasn't saying that it I wasn't saying that it couldn't because it was a correctional officer. I was simply saying I don't believe that the defendant produced any authority that a correctional officer would qualify as a government agent as contemplated by this line of case law. Thank you for that clarification. And with regards to the questioning as to the point at which the Sixth Amendment right attached in this case, at what point is your position that that right attached? Well, it sounds like it attached on the second subsequent to the arraignment. So, the conversation having occurred before presumably the right would not then have attached because he hadn't been charged or arraigned. Is there any information that you have with regards to the two bond orders on the February 1st bond order in the caption on the right-hand side above the case number? It says hold. There was not a complaint that was filed that day and then a subsequent bond order and the complaint were filed. Do you have any information as to anything else in the record that would explain those two different orders? I do not. Again, Your Honor, all I can do is apologize. I overlooked this sequence of events. That was just a mistake on my part. Thank you. Are there any other questions? Thank you for your time, Your Honors. Thank you. Mr. Axelrod, any rebuttal? Yes, thank you, Your Honor. I would first like to respond to the first issue, specifically the phrase of like character to a knife. Like we argued in our opening brief, the term of like character only modifies the portion of the sentence immediately preceding the word or, meaning here, it only applied to the weapon set forth in section 24-1 and only two of those weapons resembled a knife at all. That was a ballistic knife or a switchblade knife, neither of which apply here. For those reasons, the state was required to prove that this item qualified as a knife, not a knife of like character to a knife. I will also say that the cases that we cited for saying that they were made from metal, that was us trying to find case law that, you know, these types of shanks qualified as a knife under this exact statute. And the only case law we could find was for sharpened metal. And that's why we wanted to make that distinction. And finally, I'll just say, with the rule of line of D and the way that the proper to be very specific about what qualifies as a knife. And then for the second issue, I will just point out that the orders, I think the reason that opposing counsel and I had some trouble was that there was obviously a lot of confusion with the overlapping court appearances and everything. And so for those reasons, I believe that it would still be proper to use the Messiah analysis for being able to fulfill the goals of that law. And I will just say that the correctional officers, I believe, should certainly be considered government agents for purposes of Messiah violations so that if we do find that this was proper in this instance, I do believe this was clearly a deliberate elicitation by a government agent. And so yes, if there are no other questions, I would just reiterate that for those reasons, we're asking for Mr. Anderson's conviction to be dismissed or to have this matter remanded for a new trial. Thank you. No further questions. This court will take the matter under advisement and the court will stand in recess.